**Salem**

PANDORA LYNN CAIN

v.

COMMONWEALTH OF VIRGINIA, *ex rel.*

No. 1556-89-3

Decided March 12, 1991

COUNSEL

Marc James Small, for appellant.

Betty Jo Anthony, Assistant Commonwealth's Attorney (E. Ann Hill, Assistant Commonwealth's Attorney, on brief), for appellee.

(David A. Bowers, guardian *ad litem*, on brief), for minor children.

OPINION

BAKER, J.—Pandora Lynn Cain (mother) appeals from an order of the Circuit Court of the City of Roanoke (trial court) which terminated the parental rights to her three infant children, two of whom had been fathered by Calvin Cockeral, the other by Leslie Packer. Termination of the parental rights of the fathers has not been appealed.

Mother contends that the trial court erred because the evidence (1) did not show that the Roanoke City Department of Social Ser-

vices (department) complied with the requirements of Code § 16.1-283, and (2) is insufficient to support the allegations made in the department's petition asking that her parental rights be terminated.

The department's petition and basic premise for termination is that "[t]he mother without good cause has been unwilling or unable within a reasonable period of time" to care for the children. The department argued that the fact of mother's incarceration per se established lack of "good cause" for her inability to care for the children. The trial court conceded, "[t]hat's the issue," and, in announcing its decision to grant the petition to terminate said, the "good cause that has been advanced . . . is the commission of the crime of robbery." We decline to adopt that per se rule.

■ Residual parental rights may not be terminated unless the department has proved by clear and convincing evidence (1) that "termination of parental rights 'is in the best interests of the child'; (2) that the neglect or abuse suffered by the child presents 'a serious and substantial threat to his life, health or development' and (3) that it is 'not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to [the] parent' within a reasonable period of time." *Edwards v. County of Arlington*, 5 Va. App. 294, 306, 361 S.E.2d 644, 650 (1987)(quoting Code § 16.1-283(B)). Incarceration alone does not meet those evidentiary requirements.

■ "Statutes terminating the legal relationship between parent and child should be interpreted consistently with the governmental objective of preserving, when possible, the parent-child relationship." *Weaver v. Roanoke Dep't of Human Resources*, 220 Va. 921, 926, 265 S.E.2d 692, 695 (1980). Our review of the record reveals that the children were neglected during the period which preceded mother's request to the department for assistance. They had neither housing nor proper medical care and mother did not oppose temporary placement of the children in the custody and care of strangers. However, except for her involvement in the robbery and circumstances resulting therefrom, there is no clear and convincing evidence that with assistance contemplated by our statutes she would not have been able to have corrected the neglect which existed prior to her incarceration. That was the burden of the department and it was not met.

█ Reasonable and appropriate efforts must be made to assist a delinquent parent in remedying the conditions that lead to a parent's temporary relinquishment of the children to the care of the department. *See Harris v. Lynchburg Div. of Social Servs.*, 223 Va. 235, 288 S.E.2d 410 (1982). The offer of such assistance is a prerequisite to termination of parental rights. *Id.* at 243-44, 288 S.E.2d at 415.

█ In the case before us, the record discloses that on October 12, 1987 mother applied for public assistance. Initially, the children were taken into the custody of the department and she was advised of all the services available to her, given food stamps, medical screening, housing information and transportation to a housing site. An agent of the department was assigned to mother and two weeks later on October 29, 1987 advised her that to regain custody of the children she must seek counseling, obtain housing, maintain employment and visit with the children. Five days later, mother was involved in a robbery, was apprehended and incarcerated in a Roanoke jail. She remained there until her trial on April 12, 1988. She was found guilty, sentenced to fifteen years, eight years of which were suspended. Subsequently, she was transferred to the Goochland correctional center where she remained incarcerated at the time of the trial court hearing on the department's petitions to terminate her parental rights. Each petition contained the following statement as the reason for the department's petition:

[The] child was committed to the Dept of Social Services on 10-15-87 and the mother, without good cause, has been unwilling or unable within a reasonable period to remedy substantially the conditions which led to the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C), which provides authority to terminate parental rights, requires that "reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies" must have been made, and notwithstanding those efforts the parent is shown by clear and convincing evidence to "have been unwilling or unable to substantially remedy the conditions" which led to the placement of the children in foster care.

Between October 29, 1987 and March 1988 the department had no contact with mother and no additional services or assistance had been offered to her. In fact, when the agent contacted mother in Roanoke jail in March 1988, it was only to "just let her know how the children were doing." No rehabilitation or other program was suggested which would have assisted mother to regain custody of her children when and if released. At that time, the department did not know whether incarceration would result and, if so, the extent thereof. By December 15, 1987, however, the department had already decided that adoption would be its goal. Moreover, after the March 1988 visit, no agent of the department contacted mother until mother wrote to them requesting visitations.

Viewing the totality of this record, it appears that, because of mother's initial neglect followed by her conviction for robbery, the department made no effort to assist mother as contemplated by the parental rights termination statutes. The department simply sought termination of parental rights without first offering services which would enable the court to determine whether in fact mother was unwilling or unable, if given the opportunity, to correct or eliminate the conditions which resulted in the initial neglect. In the absence of clear and convincing evidence that the department offered the services required by statute, the termination, as indicated by the trial court's statement of the issues and its finding, was made solely on the basis of the robbery and subsequent incarceration.

Because we reverse the finding of the trial court, if the department wishes to proceed further with this matter on remand we direct that it make a determination whether an appropriate family member as indicated by the record is willing and able to care for the children until such time as mother may be released from the Goochland facility and the validity of mother's suggestions of probable employment upon her release as she asserted in the termination proceeding before the trial court.

For the reasons stated, the judgment of the trial court is reversed and remanded for such other and further relief as the best interests of the children and rights of mother may require.

*Reversed and remanded.*

Koontz, C.J., and Cole, J., concurred.