COURT OF APPEALS OF VIRGINIA


Present: Judges Bumgardner, Humphreys and Clements


FAIRFAX COUNTY DEPARTMENT OF
 FAMILY SERVICES
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 0821-00-4        JUDGE RUDOLPH BUMGARDNER, III

USMAN IBRAHIM


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    Jane Marum Roush, Judge

            Stephanie J. Scott (David P. Bobzien; Robert
            Lyndon Howell; Dennis R. Bates; Office of the
            Fairfax County Attorney, on brief), for
            appellant.

            No brief or argument for appellee Usman
            Ibrahim.


     The Fairfax County Department of Family Services appeals

the denial of its petition to terminate the parental rights of

Usman Ibrahim in his three children.[1]  The trial court found the

evidence insufficient, but the department contends the evidence

mandated a termination under Code § 16.1-283(C)(2).[2]  Finding no

error, we affirm.

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

     [1] The three children are Adizza (b. 4/20/87), Ninat (b.
4/14/89), and Farrizat (b. 6/2/93).

     [2] Code § 16.1-283 provides, in part:

            C.  The residual parental rights of a
         parent or parents of a child placed in

The father and mother were foreign nationals living in Virginia with their three minor children.  The father and mother were arrested for importing drugs into the United States when they returned from a trip to their native country, Ghana.  Federal authorities convicted and incarcerated them in 1994,[3] and at that time, the parents placed the children with a friend, Felicia Springs.

The department did not become involved until October 1997, when it removed the children from Springs's custody because she physically abused them.  The department placed the children in a foster care home in November 1997.  Two of them remain in the same foster care home, but the third child requires residential treatment.

---

foster care . . .  may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

2.  The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

[3] The mother was deported upon her release in 1997 to reside in Ghana.  Her parental rights were terminated based in part upon her instability and she did not appeal that decision.

The department's initial service plan would have placed the children with their maternal aunt. The department did not consider placing the children with the father because of his incarceration and the expectation that he would be deported upon release. The department did consider returning the children to the father if he remained in the United States but never acted on that possibility.

In January 1999, the department changed the goal to adoption because "[t]here has not been significant progress on the part of . . . [the father]. The goal of return home and placement with relative cannot realistically be achieved." It filed termination petitions, and the juvenile and domestic relations district court terminated the father's parental rights June 2, 1999. The father appealed to the circuit court which denied the termination for lack of evidence.

On appeal, the department contends it proved that termination was proper under Code § 16.1-283(C)(2). The department argues the children entered foster care because the parents were incarcerated and unavailable when the department removed the children from Springs. Twenty months after the removal and placement in foster care, the father was unavailable because of his deportation. The department contends that rendering little or no service to the father amounted to rendering reasonable services because it could not offer services during his incarceration in a federal prison. After

deportation, the department maintains it had no way to provide services in Ghana. The department stresses the father had not contacted the department during the two months following deportation.

The evidence in this case is not in dispute, though the inferences arising from it and the interpretation of it are. We view the evidence in the light most favorable to the father, and grant to it all reasonable inferences fairly deducible from it. Ferguson v. Stafford County Dep't of Social Servs., 14 Va. App. 333, 336, 417 S.E.2d 1, 2 (1992). When the trial court's judgment is based upon evidence heard ore tenus, it will not be disturbed on appeal unless plainly wrong or without evidence to support it. Logan v. Fairfax County Department of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

To terminate the parental rights under Code § 16.1-283(C)(2), the trial court must find by clear and convincing evidence (1) that termination is in the best interests of the child, (2) that the father failed to remedy substantially the conditions leading to, or requiring continuation of, foster care, and (3) that the father failed to remedy the conditions despite receiving reasonable and appropriate services. The trial court's written opinion primarily addressed termination under Code § 16.1-283(C)(1): failure to maintain contact and plan for the future of a child. The juvenile court had terminated the father's rights under that

subsection, and it best fit the facts presented to the trial court. However, the opinion addressed both bases for termination under Code § 16.1-283(C). The trial court's opinion makes clear the department failed to meet its burden under Code § 16.1-283(C)(2) for three reasons: (1) the conditions that led to the placement had been remedied, (2) the only reason offered for termination was the father's initial incarceration and subsequent deportation, and (3) the department did not provide reasonable and appropriate services to the father. The evidence supports the trial court's decision to deny termination.

The trial court found the conditions that brought the children into foster care had been substantially corrected because Springs was no longer their caretaker and the father was no longer incarcerated. The trial court concluded the father's deportation was the determining factor in the department's decision to seek termination of rights. It found the department never developed a service plan for the father, though he had a substantial relationship with his children before his incarceration. The trial court found the department had offered no services to the father to assist in having the children returned to him, and it had not considered returning the children to him in Ghana. The trial court ruled deportation alone was an insufficient basis for terminating residual parental rights.

- 5 -

The children lived with their mother and father prior to their incarceration. Nothing suggested the father abused them, and the trial court found he had never abused or neglected them. The children were not removed from their father's care but from the person with whom the parents entrusted them. The father maintained regular contact with his children during his incarceration. He called them every Sunday morning until the foster parents changed their telephone number. He wrote them letters and they wrote to him. In June 1998, the children's caseworker took them to see their father. In June 1999, he was released from incarceration.

The father was incarcerated when the children entered foster care, but even long-term incarceration alone is an insufficient basis upon which to terminate parental rights. Ferguson, 14 Va. App. at 340, 417 S.E.2d at 5. The father's sentence was not long-term or unknown. The initial service plan dated December 8, 1997 anticipated the father would be released within a year. The department would have considered returning the children to the father if he remained in the United States. While a parent's long-term incarceration is a factor for the court to consider, along with "other evidence concerning the parent/child relationship," it "does not, per se, authorize termination of parental rights or negate the Department's obligation to provide services." Id. (emphasis added).

Code § 16.1-283(C)(2) requires the department to provide reasonable and appropriate services to the father.  Harris v. Lynchburg Div. of Social Servs., 223 Va. 235, 243, 288 S.E.2d 410, 415 (1982) (the department must provide reasonable and appropriate services to a delinquent parent prior to terminating his rights); Cain v. Commonwealth, 12 Va. App. 42, 46, 402 S.E.2d 682, 684 (1991) (evidence did not show that with the services required by statute the mother would not have been able to correct neglect which preceded her incarceration).  The services offered by the department must be reasonable and appropriate given the circumstances of a particular case.  See Ferguson, 14 Va. App. at 338, 417 S.E.2d at 4; Cain, 12 Va. App. at 45, 402 S.E.2d at 684 (termination order reversed).  When there is undisputed evidence that the department has not offered a parent reasonable and appropriate services, "reversal of a termination order is required."  Harris, 223 Va. at 243, 288 S.E.2d at 415 (citation omitted).

Despite the department's assertion that it provided services, the department failed to maintain contact with the father or to provide him with any services.[4]  It did not keep the father abreast of Adizza's condition or residence, nor did it advise him of the children's new foster care caseworker in April

_____

[4] The department provided the children with extensive services, but that does not satisfy the requirement it provide the parent with reasonable and appropriate services.

- 7 -

1999.  The children's guardian <u>ad</u> <u>litem</u> did not send him an introductory letter, and the children's therapist never addressed reunification with their father.  The department knew the father wanted to regain custody upon his release and the mother supported that placement.  Nonetheless, the department never evaluated him, assisted in his transition from incarceration, or investigated the possibility of coordinating efforts with an agency in Africa.  The trial court found the department's expectation that the father contact the department unreasonable because he did not know who was working with the children.  It also found the period of two months after deportation an unreasonably short period in which he was to establish contact.

Finally, the department did not establish a <u>prima</u> <u>facie</u> case under Code § 16.1-283(C)(2)[5] because the father never failed to do what the department or the court required of him.  The department never advised the father to seek parenting skills training or mental health or substance abuse services despite

---

[5] "Proof that the parent . . ., without good cause, [has] failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with <u>their obligations under and within the time limits or goals set forth in a foster care plan filed with the court</u> . . . and agreed to by the parent . . . shall constitute <u>prima</u> <u>facie</u> evidence of this condition." Code § 16.1-283(C)(2).

its contact with the father's caseworker in June 1998.  No court order required him to seek services.

This is not a case involving an absentee father with no relationship with his children.  The department contends the home and the services that the father could provide in Ghana justify severing the relationship between the children and their father.  However, the trial court would have to speculate about the children's future because the department offered no information about the situation in Ghana and made no efforts to determine the conditions there.  While it may well be best for the children to remain in the United States, the decision must be based on fact not supposition.

"The termination of parental rights is a grave, drastic, and irreversible action."  Lowe v. Dept. of Public Welfare, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986).  The statutory framework for terminating parental rights, primarily set forth in Code § 16.1-283, "provides detailed procedures designed to protect the rights of the parents and their child[ren].  These procedures must be strictly followed before the courts are permitted to sever the natural and legal bond between parent and child."  Rader v. Montgomery County Dep't of Social Servs., 5 Va. App. 523, 526, 365 S.E.2d 234, 235 (1988).  The trial court did not err in denying the petition because the evidence was

insufficient to sever this bond between the father and his children.  Accordingly, we affirm.

<u>Affirmed.</u>

Clements, J., concurring.

I join the majority because I am compelled to accept as correct its interpretation of Code § 16.1-283(C)(2) and, thus, I, too, cannot say that the trial court erred as a matter of law. I write separately, however, to address an issue heretofore not addressed.

To grant the department's prayer for termination pursuant to Code § 16.1-283(C)(2) the trial court was required to find by clear and convincing evidence (1) that termination was in the best interests of the children, and (2) that the father failed to remedy substantially the conditions leading to, or requiring continuation of, foster care, and (3) that the father failed to remedy the conditions despite receiving reasonable and appropriate services.

While I agree that a failure of proof on any prong of the three-prong test defeats termination, nowhere in its opinion or order did the trial court address or make findings concerning the best interests of the children. The trial court focused solely on the father and the department.

While the father and mother were foreign nationals, the children are citizens of the United States and speak English only. The children first came to the department's attention in 1995 when it was alleged that Springs was abusive to and neglectful of these children and their sibling Fatima, now an adult. That petition was dismissed as to these children.

- 11 -

Mr. Ibrahim completed his federal penitentiary sentence and was deported in approximately June 1999, and he is prohibited from returning to the United States.  He is reported to be working at a family business in Ghana.

Each of the children has special needs.  Adizza, the oldest, has suffered from serious psychological disturbance and has been hospitalized multiple times.  By age eleven she was on three significant medications for depression, mood stabilization, and hallucinations.  She has a low frustration tolerance and can be aggressive, explosive, and hostile.  Several times she has attempted to harm herself and commit suicide.  Dr. James Steg, her psychiatrist, testified to her need for required residential treatment.

Ninat, who has been provided with individual and family therapy, is on Ritalin.  Her therapists believe that she, too, is at risk for suffering psychological problems without continued intervention.

The youngest child, Farrizat, also known as Fifi, has no recollection of her father and no attachment or bond to him.  When placed in her foster home she suffered from significant separation anxiety.  She would become hysterical for up to an hour if separated from her foster parents.  Individual and family therapy has also been provided to her.

Tawanda Turner-Brown, licensed clinical social worker and therapist for the children, testified that they were fearful of

- 12 -

their father and that he would come and take them to Africa, as he told them in a phone call from prison that he would. That call by the father resulted in two weeks of "chaos" in the home with Ninat and Fifi crying and screaming. Ms. Turner-Brown was met with resistance from the children when she attempted to guide them to the possibility of resuming a relationship with their father. Dr. Steg testified that the children would need to have a gradual transition to the father's home to overcome their fear, made difficult by the father's inability to participate in such a process. Ms. Turner-Brown recommended that the children stay with their current foster parents, with whom they had a bonded, loving relationship.

The record in this case reveals that the Guardian ad litem for the children argued to the trial court that termination was in "these children's best interest."

To me, the evidence before us is clear and convincing that it is in the best interests of these children that the father's parental rights be terminated. However, in this case we have been required by statute to elevate the "technical legal rights of the parent" over the paramount consideration--the best interests of the children. Forbes v. Haney, 204 Va. 712, 716, 133 S.E.2d 533, 536 (1963). I can only reflect upon the sadness and turmoil in the lives of these children that the uncertainty of continued foster care will bring.