COURT OF APPEALS OF VIRGINIA


Present:  Judges Humphreys, Clements and Senior Judge Coleman
Argued at Richmond, Virginia


LISA HARMON

MEMORANDUM OPINION[*] BY
v.    Record No. 0895-00-2      JUDGE ROBERT J. HUMPHREYS
FEBRUARY 20, 2001
RICHMOND COUNTY DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF RICHMOND COUNTY
Joseph E. Spruill, Jr., Judge

George W. Townsend, III, for appellant.

(Wayne L. Emery; Office of the Commonwealth's
Attorney, on brief), for appellee.  Appellee
submitting on brief.


Lisa Harmon appeals a decision of the circuit court
terminating her residual parental rights to her eleven-year-old
twin sons.  For the reasons that follow, we affirm in part and
reverse in part.

Harmon first claims that the trial court erred in quashing
her subpoenas directed to the boys, requiring their presence and
testimony at the termination hearing.  Specifically, Harmon
contends that the trial court erred in finding, after a separate
hearing on the matter, that the boys were not "of an age of

---

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

discretion" sufficient to testify pursuant to Code
§ 16.1-283(G).

> In cases in which the testimony of a child
> younger than fourteen is sought, the
> determination of whether or not the child
> has reached an "age of discretion" is
> committed to the sound discretion of the
> trial court.  A child has reached the age of
> discretion if the evidence proves that he or
> she is "sufficiently mature to have
> intelligent views and wishes on the subject
> of the termination proceeding."

>    *      *      *      *      *      *      *

> The trial court's determination will be
> reversed on appeal only for an abuse of
> discretion.

Hawks v. Dinwiddie Dep't of Soc. Servs., 25 Va. App. 247, 253,
487 S.E.2d 285, 288 (1997) (citations omitted).

Harmon argues the trial court erred in relying on the
testimony of Dr. Roy Jarnecke, a clinical psychologist, in
reaching its decision.  Dr. Jarnecke's testimony was based
solely upon examinations of the boys he had performed
approximately 22 months prior to the hearing.  However, in its
order, the trial court appears to have considered not only the
testimony of Dr. Jarnecke, but also the testimony of social
worker Robin Johnson, in considering the boys' ability to
provide mature, intelligent views and wishes on the subject of
the termination.  Without the benefit of a transcript or
statement of facts to demonstrate otherwise, we cannot hold that
the trial court abused its discretion in determining that the

-

boys were not of an age of discretion sufficient to testify pursuant to the statute.

Harmon also argues that the trial court erred in failing to personally interview the boys to make its determination. However, Code § 16.1-283 does not require that the trial court personally interview the child at issue. On this record, we find no abuse of discretion with regard to the method chosen by the trial court to make its determination. See Deahl v. Winchester Dept. Soc. Serv., 224 Va. 664, 676, 299 S.E.2d 863, 869 (1983) (the methods of approaching and resolving this issue are left to judicial discretion). Accordingly, we affirm on this issue.

Finally, Harmon contends that Richmond County Department of Social Services ("DSS") failed to present clear and convincing evidence during the termination hearing to satisfy the criteria of Code § 16.1-283(B).[1]

> Residual parental rights may not be
> terminated unless the department has proved
> by clear and convincing evidence (1) that
> termination of parental rights is in the
> best interests of the child; (2) that the
> neglect or abuse suffered by the child
> presents a serious and substantial threat to
> his life, health or development; and (3)
> that it is not reasonably likely that the
> conditions which resulted in such neglect or
> abuse can be substantially corrected or

---

[1] Harmon also argues that the evidence is insufficient to support termination under Code § 16.1-283(C)(2). In light of our decision concerning the trial court's actions under Code § 16.1-283(B), we do not address this argument.

> eliminated so as to allow the child's safe
> return to [the] parent within a reasonable
> period of time.

Cain v. Commonwealth, 12 Va. App. 42, 44, 402 S.E.2d 682, 683
(1991) (citations omitted).

Evidence presented at the termination proceeding
established that the boys were first placed in foster care in
August of 1994 due to some issues of sexual abuse by their
father.[2] They were eventually returned home, but in 1995, DSS
became involved with Harmon and her children again after
receiving a child abuse complaint involving Harmon's live-in
boyfriend. In September of 1996, DSS had to intervene a third
time due to a custody dispute over Harmon's youngest child. DSS
performed a study of Harmon's home at that time and had
"significant issues about [the] house." DSS provided Harmon
with a service plan and assistance to remedy the issues.

In November of 1997, after receiving yet another complaint,
DSS once again investigated Harmon's home and had concerns. The
primary concern was that of inadequate food. In addition,
although it was cold and rainy out, the large two-story house
contained only a kerosene heater on the lower level. This
concerned DSS workers because Harmon's youngest child suffered
from a respiratory problem and Harmon had been advised that he

---

[2] Harmon also has three other children who are not involved
in this appeal. These children are not currently in Harmon's
care.

should not be exposed to kerosene heat.  In the bathroom of the home, a DSS worker observed water running onto an electric heater that had clothing strewn onto it.  The upstairs had no electricity, and electrical wiring was exposed through some of the walls of the house.

DSS obtained an emergency removal order and removed all of Harmon's children that same day.  The twin boys were initially placed with a foster family but were eventually moved to the Covington Boys Home due to behavioral problems.  Psychological evaluations of the boys established that their cognitive functioning was low and that they suffered from emotional issues that were indicative of chronic depression and "coping deficit difficulties."

DSS provided services to Harmon during this time to help her remedy her neglectful care of her children.  These services included psychological services, financial services, parenting classes, and other support services.  However, Harmon often failed to take advantage of the services and, at times failed to take advantage of visitation with the children.  In addition, even without the responsibility of caring for her children, Harmon changed residences as many as six times and employment as many as five times, during this period of less than two years. Harmon was most often terminated from her various jobs due to excessive absenteeism.  Consequently, Harmon failed to make rent payments and was evicted from several of these residences.

-

DSS ultimately moved to terminate Harmon's residual parental rights in the Spring of 1999. Although Harmon had been living in adequate housing for several months prior to the trial, her situation did not establish that she had made changes sufficient to remedy the neglect of her children. Harmon was being supported by her current boyfriend, who lived in the home with her, and testified that she would have difficulty maintaining her current lifestyle without his income. She had also changed jobs and residences again within that time period.

Thus, we cannot say that the trial court was plainly wrong in finding that DSS presented clear and convincing evidence that the children suffered from neglect and that it was not reasonably likely that Harmon could substantially correct this problem within a reasonable time. However, the statute requires more to terminate parental rights. It requires a specific determination, based upon clear and convincing evidence, that termination is in the best interests of the child. In fact, the plain language of the statute states that an explicit finding in this regard, based on clear and convincing evidence, is a prerequisite to the termination of parental rights. See Stanley v. Fairfax Cty. Dept. of Soc. Serv., 242 Va. 60, 63, 405 S.E.2d 621, 623 (1991) (the best interests of the child must be the primary concern of the court).

> In determining what is in the best interests of the child, a court must evaluate and consider many factors, including the age and

-

> physical and mental condition of the child
> or children; the age and physical and mental
> condition of the parents; the relationship
> existing between each parent and each child;
> the needs of the child or children; the role
> which each parent has played, and will play
> in the future, in the upbringing and care of
> the child or children; and such other
> factors as are necessary in determining the
> best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

In this case, the trial court based its decision that Harmon's parental rights should be terminated on its finding that the children were progressing better developmentally at the Covington Boys Home. In its decision, the trial court stated "we are talking about opportunity here. This is an opportunity for these young men to somehow be brought into the mainstream, and I think to do that, the best opportunity for them would be if these rights were terminated." This observation fails to establish or even suggest that the trial court carefully evaluated the specific factors enunciated in Barkey. Accordingly, the court's ruling is insufficient to support a finding of termination by clear and convincing evidence.

Although DSS established that Harmon neglected her children and, without good cause, failed to respond to their rehabilitative efforts, these findings standing alone are insufficient as a matter of law to support the termination of parental rights. There must also be an explicit finding that

-

such a drastic action is in the best interest of the child.  We find no such determination in the record here.  We therefore agree that the trial court erred in finding the evidence sufficiently clear and convincing to meet the statutory requirements of Code § 16.1-283(B).

Accordingly, the judgment appealed from will be reversed on this issue.

Affirmed in part
and reversed in part.

-