COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, Bumgardner and Senior Judge Overton
Argued by teleconference


GLORIA SINGLETON

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0809-03-2                  JUDGE NELSON T. OVERTON
                                                      OCTOBER 28, 2003
RICHMOND DEPARTMENT OF
 SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                        Randall G. Johnson, Judge

          Patricia Barnett for appellant.

          Kate O'Leary; John LaFratta, Guardian *ad litem* for the infant child
          (Office of the City Attorney; The Boulevard Law Offices, on brief),
          for appellee.

       Gloria Singleton (mother) appeals a decision of the trial court terminating her parental

rights to her daughter D.S. pursuant to Code § 16.1-283(B).  On appeal, appellant contends the

evidence was insufficient to support the termination.  For the reasons that follow, we affirm.

                                    BACKGROUND

       We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

       So viewed, the evidence proved that in March 1999, the Richmond Department of Social

Services (the Department) received a complaint indicating D.S., then six years old, had missed

over seventy days of school due to various ailments for which there was no medical explanation.

D.S. was transferred to the care of the Department.  At that time, D.S. was severely overweight,

_____

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

lethargic, and suffering from developmental delays. D.S. had been prescribed three mental health medications. Shortly after her transfer to the Department's custody, doctors discontinued the medications and D.S.'s behavior and health improved.

The Department submitted an initial foster care plan with the goal of return home. Mother was instructed to attend parenting classes, obtain treatment for her serious mental health problems, and maintain adequate and appropriate housing. Mother attended the parenting classes, but the social worker testified the course did not improve mother's inadequate parenting skills.

Dr. Gerard Crichingo testified he performed mother's mental health evaluation and parenting skills assessment. Crichingo concluded mother suffered from mental illnesses and "had a long history of treatments that she doesn't seem to follow because she's very resistant to it." Mother suffers from depression, bi-polar disorder, and post-traumatic stress disorder. Crichingo found mother had a "very negative impact" on D.S., causing D.S. to be unable to "develop appropriately." Mother communicated to D.S. that D.S. was "the child of Jesus" and that mother believed "that she [became] pregnant by Jesus." Mother failed to properly take her prescribed medication and was repeatedly hospitalized for her mental illnesses. Crichingo concluded that due to mother's mental health issues, she was unable to adequately parent D.S.

In July 2000, clinical social worker Stephanie Saumer assessed mother's parenting skills. After her evaluation, Saumer concluded D.S. would not be safe if she returned to mother's care. Over the ten weeks Saumer was involved in conducting the evaluation, she observed that mother's home was disorganized with toxic cleaning items unsecured throughout the residence. Mother housed a pit bull beneath the stairs in the residence. She was unable to follow conversations, and her thought process continually wandered off topic in her discussions with Saumer. During one visit to the house in which D.S. accompanied Saumer, D.S. located a gun in

mother's bedroom and fired it in the house. Mother responded to the incident by curling into a fetal position and losing her composure.

The Department provided visitation between mother and D.S. from the time D.S. entered foster care until July 2001, at which time mother halted the visits. The Department made referrals to parenting classes, assisted mother with getting her water turned on and replacing a kitchen sink, and arranged and funded a number of parenting assessments. The Department provided mother with transportation and bus tickets.

Analysis

Code § 16.1-283(B) provides in pertinent part:

> The residual parental rights of a parent or parents of a child found by the court to be neglected or abused and placed in foster care as a result of (i) court commitment . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:
>
> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

Mother contends the Department failed to demonstrate it provided her with adequate services or made a reasonable effort to rehabilitate her. Essentially, she asserts the Department was required, under Code § 16.1-283(B), to provide her with the "reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies" to remedy the situation leading to D.S.'s foster care, which Code § 16.1-283(C) mandates. Mother attempts to import into Code § 16.1-283(B) the requirements of Code § 16.1-283(C).

> The principles of statutory construction require us to ascertain and give effect to the legislative intent. The plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction; a statute should never be construed so that it leads to absurd results.

Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424-25 (1992) (citations omitted). Code § 16.1-283(B) simply does not include such a requirement. In fact, Code § 16.1-283(B) merely requires the court, when determining the likelihood that the parent will be able to substantially correct the inadequate home conditions, to "take into consideration the efforts made to rehabilitate the parent . . . *prior to the child's initial placement in foster care.*" (Emphasis added.)

Mother reasons that because the trial court determined the Department had failed to establish, under Code § 16.1-283(C), that it had provided mother with "reasonable and appropriate" rehabilitative services, its further finding that termination of her parental rights was appropriate under Code § 16.1-283(B) was inconsistent. The two subsections require separate analyses. The trial court did not find the Department had failed to provide adequate rehabilitative efforts prior to D.S.'s removal from mother's home. Furthermore, even if it had, the statute only requires the court to "take into consideration" the efforts made. A failure to make rehabilitative efforts does not necessarily, under Code § 16.1-283(B), make termination inappropriate.

Mother relies on Banes v. Dept. of Soc. Servs., 1 Va. App. 463, 339 S.E.2d 902 (1986), and Cain v. Commonwealth, 12 Va. App. 42, 402 S.E.2d 682 (1991), to support her contention that "[t]he [c]ourts have applied the same requirement for services to cases of termination ordered under subsection (B), as those ordered under subsection (C)(1) and (C)(2)." That reliance is simply misplaced. Banes was decided before the language limiting the scope of the court's consideration of the Department's efforts was added. Cain does not address Code § 16.1-283(B).

The trial court did not err by concluding that under Code § 16.1-283(B), the Department's "duty [to provide services] is [not] as strong as it is under (C)(1) and (C)(2)."

Mother also contends the evidence failed to establish she suffered from a mental or emotional illness or mental deficiency of such severity that there is no reasonable expectation that she will be able to care for her daughter.

The Department introduced extensive testimonial evidence demonstrating the severity of mother's mental illness. She suffers from depression, bi-polar disorder, and post-traumatic stress disorder. She has been hospitalized repeatedly for her mental condition. Both Crichingo and Saumer testified mother's illness would prevent her from caring for D.S. The evidence supports the trial court's determination. The court did not err by terminating mother's residual parental rights under Code § 16.1-283(B).

Accordingly, we affirm the trial court's decision.

Affirmed.