COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Kelsey and Senior Judge Coleman
Argued at Richmond, Virginia

MARGARET BAILEY

MEMORANDUM OPINION[*]
PER CURIAM
MARCH 11, 2008

v. Record No. 0728-07-2

HALIFAX DEPARTMENT OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF HALIFAX COUNTY
Leslie M. Osborn, Judge

Mark Mokris (Law Office of Mark Mokris, P.L.C., on briefs), for appellant.

Carol B. Gravitt (Brandon G. Hudson, Guardian *ad litem* for the minor child; Gravitt & Gravitt, P.C., on briefs), for appellee.

Margaret Bailey appeals a decision of the circuit court terminating her residual parental rights pursuant to Code § 16.1-283(C)(2), claiming the trial court erred in finding that clear and convincing evidence supported termination. We disagree and affirm.

I.

We view the evidence in the "light most favorable" to the prevailing party in the circuit court and grant that party the benefit of "all reasonable inferences fairly deducible therefrom." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

Several years ago, the Halifax Department of Social Services (HDSS) became involved with Margaret Bailey when one of her children was run over by a car.[1] Another prevention case was opened when police were repeatedly called to Bailey's home regarding J.T., one of her three

[*] Pursuant to Code § 17.1-413 this opinion is not designated for publication.

[1] After an investigation into the child's death, HDSS closed the case and the record of it has since been purged.

remaining children. At first, Bailey claimed the problems were with J.T. only and she simply wanted J.T. "out of her house." She consistently refused preventative services from October 2004 until January 2005. J.T. was placed in foster care in January 2005.

Thereafter, HDSS and Bailey conferred on an almost daily basis because J.T. was in foster care and Bailey had requested help finding a new home. Around this time, Bailey called HDSS regarding another of her children, D.T. She had been forced to call the police several times about D.T., she said, because he was getting into trouble in school and staying out all night. But when HDSS offered its services to help Bailey with D.T., she refused. She told the social worker that it would not do any good; there was nothing that could be done.

Also during the time J.T. was in foster care, HDSS received a complaint that Bailey's six-year-old son, T.M., was wandering the neighborhood unsupervised. When a social worker arrived at her home, Bailey yelled for T.M. but could not locate him. A friend of Bailey's later found him on the far side of a busy street. In response to this incident, HDSS had Bailey sign a safety plan requiring her to know where her children were when they were not at home. During the Family Needs Assessment, HDSS once again offered Bailey services to help her with her children, but she refused.

HDSS offered Bailey a psychological evaluation, which she willingly completed. Dr. Anderson, the evaluating psychologist, testified that Bailey "basically rated herself as unable to handle child rearing responsibilities." He described her as a narcissistic and egocentric personality with significant cognitive limitations. She scored "in the high-risk category as far as child physical abuse." He concluded that her cognitive and parenting deficits render her incapable of "safeguarding the health and well-being of children in her care." As a whole, he concluded, she is "not a good candidate for child custody" and, based on her cognitive limitations, is "a poor candidate for rehabilitative efforts." If children were allowed in the home,

he testified at trial, "it would be necessary to place someone in the home with her to assist with parenting part of the day almost every day until the children reached the age of majority."

Based on Dr. Anderson's report, HDSS removed T.M. from Bailey's care with court approval on August 9, 2005. Given Dr. Anderson's estimate of Bailey's prognosis, HDSS set concurrent goals of placement with a relative or, in the alternative, adoption.[2] HDSS was unable to locate a suitable home for placement among Bailey's relatives or the fathers of her children. It therefore began discussing adoption with T.M.'s foster parents.

After T.M.'s removal from the home, Dr. Anderson evaluated the young boy. He pointed out T.M.'s "terrific hostile imagery" involving "people stabbing people" and "people killing people," a type of "violent hostile imagery" that is "very unusual for children." He opined that the imagery likely emanates from "accumulated trauma." Dr. Anderson diagnosed T.M. with Attention Deficit Hyperactivity Disorder and Post Traumatic Stress Disorder. He concluded that T.M. is a "special-needs child" that needs a "stable, structured, supportive home environment . . . to survive." He added that T.M. has got "ground to make up" and that there is no "reasonable expectation that this parent will ever be able to successfully parent [T.M.]."

The juvenile and domestic relations district court terminated Bailey's parental rights on April 28, 2006. The circuit court terminated Bailey's rights in a *de novo* proceeding on February 29, 2007.[3]

---

[2] The appropriateness of the initial goal of adoption in the foster care plan is not before us on appeal.

[3] The notice of *de novo* appeal from the district court references (by checkbox) the JDR proceeding as a "Permanency Planning Hearing" rather than one concerning "Termination of Parental Rights." The circuit court, however, treated the notice as an appeal of the termination proceeding as Bailey clearly intended. Upon further briefing by the parties, we find the notice adequately preserved Bailey's appeal despite its clear "error of reference." See Carlton v. Paxton, 14 Va. App. 105, 109-10, 415 S.E.2d 600, 602, aff'd on reh'g en banc, 15 Va. App. 265, 422 S.E.2d 423 (1992).

II.

Bailey appeals the circuit court's decision to terminate her parental rights. On appeal, Bailey claims the circuit court erred in finding clear and convincing evidence in support of termination. She also argues HDSS failed to make reasonable efforts to reunite her with her child as required by Code § 16.1-283(C).

A. CLEAR & CONVINCING EVIDENCE OF THE BEST INTERESTS OF THE CHILD

When reviewing a decision to terminate parental rights, we presume the circuit court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005) (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted)). In its capacity as factfinder, therefore, the circuit court retains "broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley, 9 Va. App. at 328, 387 S.E.2d at 795.

Under Code § 16.1-283(C)(2), parental rights may be terminated if the parents "without good cause, have been unwilling or unable" to "remedy substantially the conditions which led to or required continuation of the child's foster care placement" within a reasonable time. A parent's "mental deficiency that is of such severity that there is no reasonable expectation" that the parent will be able to "undertake responsibility for the care needed by the child" does not constitute "good cause" under Code § 16.1-283(C)(2). Richmond Dep't of Soc. Servs. v. L.P., 35 Va. App. 573, 585, 546 S.E.2d 749, 755 (2001).

Because "the rights of parents may not be lightly severed," M.G. v. Albemarle County Dep't of Soc. Servs., 41 Va. App. 170, 187, 583 S.E.2d 761, 769 (2003) (citation omitted), clear and convincing evidence must establish the statutory grounds for termination. Fields, 46 Va. App. at 7, 614 S.E.2d at 659. In the end, the "child's best interests" remain the "paramount consideration" of the courts. Akers v. Fauquier County Dep't of Soc. Servs., 44 Va. App. 247, 262, 604 S.E.2d 737, 744 (2004) (citation omitted). Even on this issue, however, we cannot "substitute our judgment" for the circuit court's, Ward v. Commonwealth, 13 Va. App. 144, 148, 408 S.E.2d 921, 923 (1991), but rather review the record only to determine if sufficient evidence supports it.

In this case, HDSS had extensive contact with Bailey and her children. One of her children was killed in an accident, and another of her children was in foster care for other reasons. In Bailey's psychological evaluation, she "rated herself as unable to handle child rearing responsibilities," at least with respect to J.T. Dr. Anderson corroborated Bailey's self-assessment and added that she was "not a good candidate" for custody of T.M. either. Further, she was so poorly suited to rehabilitative efforts that a person would need to supervise her parenting on an almost daily basis.

Bailey's incapacity to parent was exacerbated by T.M.'s special needs. Bailey, due to her mental health issues and cognitive limitations, presented a risk of child physical abuse because she was not able to provide the "stable, structured, supportive home environment" T.M. needed "to survive." T.M. testified that when he was six years old, just prior to being removed from the home, he was regularly unsupervised and would go wherever he wanted in the neighborhood. The JDR district court judge found that T.M. was a neglected child. In conjunction with the other evidence presented, the circuit court could accept the uncontradicted opinion of Dr. Anderson that Bailey would never "be able to successfully parent" T.M. This evidence

sufficiently demonstrates that a termination of Bailey's parental rights was in the best interests of T.M.[4]

Bailey counters that her long-term need for assistance should not, by itself, qualify as clear and convincing evidence of the need to terminate her parental rights. The condition in need of remedy, however, was Bailey's mental competence to supervise T.M. and oversee his care. She offered evidence at trial that she could get help from three friends who testified to their willingness to assist her with parenting responsibilities. All of these witnesses, however, had their own mental or physical health challenges that raised doubt about their potential to help Bailey.

One of the "conditions" the legislature deemed unlikely to be substantially correctable is a "mental deficiency of such severity that there is no reasonable expectation that such parent will be able to undertake responsibility for the care needed by the child in accordance with his age and stage of development." Code § 16.1-283(B). In this, as in any other unhopeful situation, it is "clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Given this evidence, we cannot say the circuit court erred in rejecting Bailey's suggested remedy for the conditions leading to T.M.'s placement in foster care. Thus the trial court was within its "broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley, 9 Va. App. at 328, 387 S.E.2d at 795.

---

[4] Bailey argues in response that a single expert opinion as to her parental prognosis can never amount to clear and convincing evidence without some evidence she failed to respond to efforts at rehabilitation. Bailey's history with HDSS makes it unnecessary to address this point.

B. Reasonable & Appropriate Services under Code § 16.1-283(C)

Bailey also argues that HDSS failed to make reasonable efforts to reunite her with T.M. after his removal. This Court has previously held that "Subsection C(2) specifically requires a showing that DSS has provided 'reasonable and appropriate' services to a delinquent parent prior to terminating his rights." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 269, 616 S.E.2d 765, 771 (2005). "In this way, the statute establishes a time frame after the child has entered foster care for the parents 'to receive rehabilitative services to enable them to correct the conditions that led to foster care placement.'" Id. (quoting L.G. v. Amherst County Dep't of Soc. Servs., 41 Va. App. 51, 57, 581 S.E.2d 886, 889 (2003)); see also Harris v. Lynchburg Div. of Soc. Servs., 223 Va. 235, 243, 288 S.E.2d 410, 415 (1982).

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992). The statute does not require proof of services when it would be "unreasonable to require the Department" to provide them. Harrison v. Tazewell County Dep't of Soc. Servs., 42 Va. App. 149, 163, 590 S.E.2d 575, 583 (2004). And once it is reasonable to change the goal to adoption, social services is no longer required to offer rehabilitative services. Akers, 44 Va. App. at 261, 604 S.E.2d at 744 (holding social services "did not have to afford appellant services after the goal was changed to adoption").

In determining the reasonableness of the agency's efforts, the "court shall take into consideration the *prior efforts* of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care." Code § 16.1-283(C)(2) (emphasis added). Social services is not required to "force its services upon an unwilling or disinterested parent." Harris, 223 Va. at 243, 288 S.E.2d at 415. And further, social services need not offer "patently unreasonable"

services for the court to conclude it has "reasonably and appropriately" carried out "its charge as required by the statute." Harrison, 42 Va. App. at 164, 590 S.E.2d at 583.

Bailey refused many of the services offered by HDSS both before and after T.M.'s removal. She repeatedly told caseworkers that all she needed was help finding a different apartment, which they helped her to accomplish. During this period, the social worker and Bailey spoke almost daily. HDSS helped Bailey find new housing by discussing options and transporting her to fill out applications. Bailey refused in-home services both when J.T. was removed from the home and again when D.T. was in danger of removal from the home. She was offered, and attended, a parenting class. She told social services that she was receiving mental health counseling from another agency. She received a psychological evaluation from Dr. Anderson and refused HDSS's offer of a parenting class for cognitively challenged parents.

By the time T.M. was removed from Bailey's custody, it had become clear to HDSS that it could do nothing to help Bailey safely and effectively parent her children. Thus, the foster care plan did not seek a return to parent, but rather sought placement with relatives or adoption. Nonetheless, after T.M.'s removal, HDSS continued to provide Bailey with visitation (with accompanying transportation) until she told T.M. to curse and misbehave so that he could come home to live with her. Long after T.M.'s removal, Bailey testified in the circuit court that she still did not need parenting classes.

The one service that Bailey did not receive was daily, in-home assistance in supervising and raising T.M. until he reached the age of majority. Code § 16.1-283(C)(2), however, requires only "reasonable and appropriate" services. Code § 16.1-283(C) did not require HDSS to furnish Bailey with services indefinitely, but only those reasonable services that could eliminate the condition that led to T.M.'s removal within a reasonable time. Dr. Anderson testified that there were no services that could remove the condition that prevented Bailey from parenting T.M.

Bailey likens her cognitive disability to a long-term incarceration, which is not itself proof of a failure to cure within a reasonable time. She cites Cain v. Commonwealth, 12 Va. App. 42, 402 S.E.2d 682 (1991), for the proposition that long term incapacitation does not relieve HDSS of its obligation to offer her services. Cain, however, was decided prior to the amendment of Code § 16.1-283(C) in 1998 limiting reasonable services to those that could remedy the condition requiring foster care within 12 months of placement. See 1998 Va. Acts, ch. 550 (anchoring the 12-month time limit to the date the child was placed in foster care). We also addressed the issue in Harrison when we held it would be "patently unreasonable to require the Department" to offer services to an incarcerated parent when there was "no avenue available" to assist "him in regaining custody of the child." Harrison, 42 Va. App. at 163, 590 S.E.2d at 583.

Considering the "prior efforts" of the agency to prevent all of her children from coming into foster care, see Code § 16.1-283(C)(2), Bailey's consistent refusal of services, see Harris, 223 Va. at 243, 288 S.E.2d at 415, and Dr. Anderson's opinion that nothing was likely to enable Bailey to remedy the reason her children were placed in foster care, see Harrison, 42 Va. App. at 163, 590 S.E.2d at 583, the circuit court correctly found Bailey was unable to remedy the condition leading to the removal and foster care of T.M. despite HDSS's offers of "reasonable and appropriate" services.

## III.

Because clear and convincing evidence supports the circuit court's findings, we affirm its judgment terminating Bailey's parental rights of T.M.[5]

Affirmed.

[5] Given our holding, the appellee's argument that the circuit court erred in excluding a letter written by the guardian *ad litem* need not be addressed.