COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Huff and AtLee
Argued by videoconference

**PUBLISHED**

JORDAN HEATH JOYCE

v.      Record No. 0736-22-3

BOTETOURT COUNTY DEPARTMENT
 OF SOCIAL SERVICES

OPINION BY
JUDGE ROBERT J. HUMPHREYS
NOVEMBER 9, 2022

FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
Joel R. Branscom, Judge

Wilson C. Pasley for appellant.

Matthew J. Schmitt (Mark C. Popovich; L. Brad Braford, Guardian
*ad litem* for the minor child; Guynn, Waddell, Carroll & Lockaby,
PC, on brief), for appellee.

Jordan Heath Joyce ("father") appeals the order of the Botetourt County Circuit Court

("circuit court") terminating his parental rights to his child, N.J., pursuant to Code § 16.1-283(C)(2).

Father argues that the circuit court erred in finding that the Botetourt County Department of Social

Services ("the Department") could not provide services to father because he was subject to a

protective order for the first year that N.J. was in foster care.  Accordingly, he argues the evidence

was insufficient to prove the Department made reasonable and appropriate efforts with respect to

father to substantially remedy the conditions which led to or required continuation of N.J.'s foster

care placement.

BACKGROUND

"On appeal, 'we view the evidence and all reasonable inferences in the light most

favorable to the prevailing party below, in this case the Department.'"  *Farrell v. Warren Cnty.*

*Dep't of Soc. Servs.*, 59 Va. App. 375, 386 (2012) (quoting *Jenkins v. Winchester Dep't of Soc. Servs.*, 12 Va. App. 1178, 1180 (1991)). So viewed, the evidence established the following:

Father and Aiden Joyce ("mother") are the biological parents to N.J., who is the subject of this appeal.[1] The Department became involved with the family in July 2018, shortly after father and mother separated. At the time, four-year-old N.J. lived with mother and his twelve-year-old sister, A.J. On July 22, 2018, mother made allegations that father had sexually abused A.J., and the Botetourt County Juvenile and Domestic Relations District Court ("the JDR court") entered an emergency protective order against father. On August 14, 2018, the JDR court entered a two-year protective order, prohibiting father from having contact with the children, "except through visitation at Sabrina's Place. (Only if juveniles wish to visit.)" The protective order stated that it expired on August 14, 2020. In June 2019, father moved the JDR court to have the protective order dissolved. The JDR court denied the motion; father did not appeal.

Also in June 2019, law enforcement responded to a call regarding A.J. hiding from her mother in the woods. Law enforcement saw that mother and the children were living in unacceptable conditions. Law enforcement contacted the Department, which found the living conditions to be "unfit" for the children. On June 12, 2019, mother signed an entrustment agreement, entrusting N.J. and A.J. to the care of the Department. Pursuant to the agreement, the Department removed the children from the home, while mother had time to try to remedy the living situation.

By August 12, 2019, mother had not remedied the living situation, and the JDR court approved the Department's petition to place the children in foster care, with a permanent goal of returning the children to their home. On that date, the JDR court found that there was an existing

---

[1] Mother's parental rights to N.J. and her older child, A.J., were terminated at the same time as father's parental rights to N.J. were terminated; mother did not appeal the circuit court's ruling. Father is not the biological father of A.J.

protective order in place against father but ordered that father could have visitation with N.J. at the Department's discretion. However, in foster care plans prepared in November 2019, April 2020, and September 2020, the Department explained, "Due to [N.J.'s] diagnosis and [father's] current health situation, [N.J.] does not visit with his father." The foster care plans included no services for father, and the Department's only other reference to father in the plans was its conclusion that he was "not a viable option" for relative placement because of a "current protective order." Each of these foster care plans described services and visitation efforts offered to mother to achieve the stated goal of returning N.J. to his own home. The target date to accomplish the goal was December 2020.

In April 2021, twenty-two months after the Department removed N.J. from the home, the Department petitioned the JDR court for termination of parental rights as to father and mother. In support of its petition, the Department cited mother's unreliable income and housing and her failure to follow through with substance abuse treatment. As for father, the Department stated that he suffers with Parkinson's disease and that he has had no contact with N.J. On July 20, 2021, the JDR court terminated father's parental rights to N.J. under Code § 16.1-283(C)(2). Father appealed to the circuit court.

On February 2, 2022, the parties appeared before the circuit court for a *de novo* hearing on the Department's petition to terminate father's parental rights. At the time of the hearing, N.J. was eight years old. When he first entered foster care, N.J., who is on the autism spectrum, was "very much out of control, at times," according to his foster mother. N.J. "was nonverbal . . . he would say words but he wouldn't communicate at all . . . he was very smart but . . . he didn't have any way to express himself." Since entering foster care, N.J. had made "leaps and bounds of improvement." N.J. was doing very well in his foster home.

The Department presented evidence about the services it offered mother to help her achieve the goal of returning N.J. to home. The Department admitted that it offered no services to father, nor did it assist father in any way to communicate with N.J. The Department explained that initially father was "not put in the service plan because . . . there was still a protective order so he couldn't have visitation." The Department conceded that father contacted the Department about visiting N.J. approximately seven times over the two-year period that N.J. had been in foster care.

Father cross-examined the Department about the foster care plans, which indicated that N.J. did not visit with father because of N.J.'s autism diagnosis and father's "current health situation." The Department explained that father never said "what he had going on" regarding his health, but during the court hearings "he sat there and just shook, could hardly speak or anything." The Department admitted that it did not inquire into father's health status but nevertheless determined that it would not be in N.J.'s best interest to visit with him. The Department never offered father visitation with N.J., even after the protective order was lifted and the Department determined that the sexual allegations against father were unfounded.

Father testified that he wanted to reunite with N.J. and that he contacted the Department "multiple times over the years" to inquire about visitation, to no avail. He also testified that he contacted Sabrina's Place about visitation; however, the representative from Sabrina's Place told father that he would have to consult with the Department about visitation. As for his health, father explained that he has "the beginning stages of Parkinson's," which causes him to shake, but his symptoms would not prevent him from parenting. Father offered that he has been co-parenting his nineteen-year-old autistic child, and believes that his experience in raising his older child would help him with parenting N.J. Father also noted that, even though he has not visited with N.J. since June 2018, he raised N.J. for the first five years of his life, and he is aware of N.J.'s autistic

behaviors.  Father requested that N.J. be returned to his custody, recognizing that they would need to go through counseling.

In closing remarks, the Department's counsel acknowledged that it was required to provide reasonable and appropriate services under the statute but argued that its "hands were tied for that initial year [that N.J. was in foster care] by a court order."  Counsel asserted that it "had no reason to attempt to provide services for reunification because at that time there was no contact."

The circuit court acknowledged that father's situation was "troubling" because the protective order "limited [father's] ability to have contact" with N.J. and father "followed the terms of the protective order."  The circuit court, however, was "concerned that somebody who wanted to have contact, it seems could do more . . . ."  The circuit court noted that the JDR court found by a preponderance of the evidence that father was "a danger" to A.J. and N.J.  The circuit court also recalled mother's testimony that father was "a danger" to A.J. and N.J.  The circuit court found that there was no "good cause for [father] to be unable to have contact for twelve months," and he had not made satisfactory efforts to have visitation with N.J. when he could have gone to Sabrina's Place.  In conclusion, the circuit court "agree[d] with the Department that they could not provide services during that period of time because of the protective order and for that reason I'm granting the petition on [N.J.] as, as well."  The circuit court further found that N.J. was thriving and that it was in N.J.'s best interests to terminate father's parental rights under Code § 16.1-283(C)(2).  Father appeals.

## ANALYSIS

### I.  No Provision of Services because of Protective Order

Father challenges the circuit court's finding that the Department could not provide services to him during the time the protective order placed restrictions on his contact with N.J.

"On review of a trial court's decision regarding the termination of parental rights, we presume the trial court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Accordingly, the trial court's decision will not be disturbed on appeal unless it committed an abuse of discretion, or unless its decision was plainly wrong or without evidence to support it." *Id.* (citation omitted). "A circuit court's discretionary authority means it 'has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Everett v. Tawes*, 298 Va. 25, 40 (2019) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). When, as here, an appellant challenges the legal conclusion of the circuit court, the appropriate standard for appellate review is *de novo*. *Farrell*, 59 Va. App. at 424; *see also Harvey v. Flockhart*, 65 Va. App. 131, 143 (2015) (question of whether circuit court's determination of adoption comported with adoption statutes reviewed *de novo*).

"'[T]he interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by' the United States Supreme Court." *Geouge v. Traylor*, 68 Va. App. 343, 368 (2017) (alterations in original) (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion)). This liberty interest of natural parents "does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. . . . [P]arents retain a vital interest in preventing the irretrievable destruction of their family life." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). The termination of parental rights is a "grave, drastic, and irreversible action." *Bristol Dep't of Soc. Servs. v. Welch*, 64 Va. App. 34, 44 (2014) (quoting *Helen W. v. Fairfax Cnty. Dep't of Hum. Dev.*, 12 Va. App. 877, 883 (1991)). "Statutes terminating the legal relationship between

parent and child should be interpreted consistently with the governmental objective of preserving, when possible, the parent-child relationship." *Id.* at 45 (quoting *Richmond Dep't of Soc. Servs. v. L.P.*, 35 Va. App. 573, 580 (2001)). "[T]he law presumes that the child's best interests will be served when in the custody of its parent." *Id.* (quoting *Judd v. Van Horn*, 195 Va. 988, 996 (1954)). "[T]he state cannot 'infringe on the fundamental right of parents . . . simply because a state judge believes a better decision could be made.'" *Id.* (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.,* 63 Va. App. 157, 173 (2014)).

Here, the circuit court terminated father's parental rights under Code § 16.1-283(C)(2). This section permits a court to terminate residual parental rights when such a termination is in the best interests of the child and:

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2). Stated differently, a court must make three separate findings by clear and convincing evidence: (1) that termination is in the child's best interest, (2) that, without good cause, the parent failed to substantially remedy the conditions that led to, or required continuation of, the child's placement in foster care, and (3) that the Department made reasonable and appropriate efforts to help the parent remedy those conditions. *See id.* Father challenges the circuit court's ruling related to the third factor. Father argues the circuit court "erred in ruling that [father] being subject to the Protective Order for the first year that [N.J.] was in foster care relieved the Department of having to prove that it made reasonable and appropriate efforts to remedy the conditions that led to or required continuation of [N.J.] being in foster care." It is undisputed that the Department offered no plan or services to father to help him parent N.J.

A parent's residual parental rights cannot be terminated "[i]n the absence of evidence indicating that 'reasonable and appropriate efforts' were taken by social agencies to remedy the conditions leading to foster care . . . ." *Weaver v. Roanoke Dep't of Hum. Res.*, 220 Va. 921, 928-29 (1980). We have held that the "reasonable and appropriate" efforts of the Department can only be judged with reference to the circumstances of a particular case and that "'a court must determine what constitutes reasonable and appropriate efforts given the facts before the court.'" *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 163 (2004) (quoting *Ferguson v. Stafford Cnty. Dep't of Soc. Servs.*, 14 Va. App. 333, 338-39 (1992) (finding statute "does not specify incarceration as a basis for terminating parental rights or waiving the need for efforts to be made by the Department")). And where "there is undisputed evidence that a parent has not been offered or provided services, . . . the party moving for termination is put to the burden of proving the factors listed in § 16.1-283(C)(2)." *Harris v. Lynchburg Div. of Soc. Servs.*, 223 Va. 235, 243 (1982); *see also Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 269 (2005) (distinguishing Code § 16.1-283(C)(2) as specifically requiring "a showing that DSS has provided 'reasonable and appropriate' services to a delinquent parent prior to terminating his rights"). "[I]n the absence of such proof, reversal of a termination order is required." *Harris*, 233 Va. at 243.

In *Cain v. Commonwealth*, 12 Va. App. 42 (1991), the circuit court terminated appellant's parental rights upon her conviction of robbery and subsequent incarceration. *Id.* at 44, 46. The department made no effort to assist appellant, and instead, "sought termination of parental rights without first offering of services which would enable the court to determine whether in fact mother was unwilling or unable, if given the opportunity, to correct or eliminate the conditions which resulted in the initial neglect." *Id.* at 46. The department argued that "the fact of mother's incarceration per se established lack of 'good cause' for her inability to care for the children," referring to the "without good cause" requirement in Code § 16.1-283(C). *Id.* at 44-45. The circuit

court agreed with the department and granted the petition to terminate parental rights. *Id.* at 44. This Court expressly declined to adopt the per se rule. *Id.* This Court reversed the circuit court's termination of parental rights because the circuit court's finding was based "solely" on the robbery and subsequent incarceration and the record lacked clear and convincing evidence that the department offered the services required by statute. *Id.* at 46.

Here, as in *Cain*, the circuit court distilled the issue on the record at the hearing: "I agree with the Department that they could not provide services during that period of time because of the protective order and for that reason I'm granting the petition on [N.J.] as, as well." We disagree.

The protective order was in place when N.J. entered foster care and expired twelve months later. The protective order allowed father to have visitation with N.J. at Sabrina's Place. The subsequent JDR court order transferring custody of N.J. to the Department in August 2019 provides for visitation between father and N.J. in the discretion of the Department. However, despite the temporary nature of the protective order and the possibility of visitation under the protective order and the custody order, the evidence establishes that the Department offered no services to father and facilitated no visitation with the child. The Department proceeded on the premise that the protective order rendered the father unreachable and exempted the Department from offering any services to father. The circuit court's finding that the Department could not offer father services was based on the protective order in place against father. As we have done in *Cain* and *Ferguson* regarding the mere fact of incarceration for a crime, we reject a per se rule that a protective order alone satisfies the evidentiary requirement of proving that the Department offered "reasonable and appropriate" services in accordance with the termination of parental rights statute. Code § 16.1-283(C)(2).

## II. Sufficiency of the Evidence

In his second assignment of error, father argues that the circuit court erred when it terminated his parental rights to N.J. under Code § 16.1-283(C)(2), because the evidence in the

- 9 -

record is insufficient to support a finding that reasonable and appropriate efforts were made with respect to father to substantially remedy the conditions which led to or required continuation of N.J.'s foster care placement. Father addresses the insufficiency of the evidence, acknowledging that this Court could agree with his first argument but still find that the circuit court reached the right result for the wrong reason when viewing all the evidence in the record. Notwithstanding our finding rejecting a per se rule, we consider whether the evidence supports a finding that the Department made reasonable and appropriate efforts regarding father.

Once again, Code § 16.1-283(C)(2) requires the Department to offer father "reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies" to remedy the conditions which led to or required continuation of N.J.'s foster care placement. "Reasonable and appropriate" efforts of the Department "can only be judged with reference to the circumstances of a particular case." *Harrison*, 42 Va. App. at 163 (quoting *Ferguson*, 14 Va. App. at 338). The Department explained in its foster care plans and at the circuit court hearing that there were reasons besides the protective order for its refusal to allow visitation. Specifically, the Department was concerned about father's "health issues" and N.J.'s autism diagnosis. At the hearing, the Department acknowledged that it was not fully aware of father's "health issues," but the foster care case manager noticed that at "a couple of the court hearings he sat there and just shook, could hardly speak or anything." The Department did not consult with father on his health status or his ability to parent an autistic child. The Department failed to make a good faith effort to engage father on his health matters or other assistance he may need to remedy conditions that required N.J.'s continuation in foster care.

The Department claims that it was not required to provide services to father after N.J. had been in foster care for twelve months and during those twelve months the protective order prevented the Department from offering services to father. "The twelve-month time limit established by Code

- 10 -

§ 16.1-283(C)(2) was designed to prevent an indeterminate state of foster care 'drift' and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement." *L.G. v. Amherst Cnty. Dep't of Soc. Servs.*, 41 Va. App. 51, 56 (2003). "The legislation established a reasonably presumptive time frame of twelve months for parents to receive rehabilitative services to enable them to correct the conditions that led to foster care placement." *Id.* at 57. The twelve-month time frame operates, in part, to encourage social services to act with timeliness. We do not see how the protective order prevented the Department from developing a plan or offering services to father within the twelve months to allow father to parent N.J. after the protective order expired. We disagree with the Department that the presumptive statutory twelve-month time frame exempts it from engaging with father after the twelve months has passed, especially considering father's attempts to contact the Department to visit his son and the temporary nature of the protective order.

On appeal, the Department argues that it was "not required to force its services upon an unwilling or disinterested parent." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 323 (2013). However, the record before us shows that father demonstrated interest in N.J. when he appeared at court hearings concerning N.J.'s custody and called the Department seven times to initiate visitation with N.J. The Department asserts on appeal that visitation was available to father all along at Sabrina's Place and that father could have had visitation if he had tried harder; yet the Department offers no explanation as to why father's phone calls were insufficient steps towards arranging visitation with N.J., which had to occur within the Department's discretion. Furthermore, when the Department provides no services to a parent, "we have no way of knowing whether he would have been willing or interested" in receiving the services. *Harris*, 223 Va. at 243-44. Accordingly, because the Department provided no services to father, we reverse the order terminating his parental rights and remand the case to allow father "an

opportunity to show what progress he can make with the assistance of the [Department] and other agencies toward establishing, within a reasonable period, a suitable home" for N.J. *Id.* at 244.[2]

CONCLUSION

For the reasons stated above, we reverse the judgment of the circuit court, vacate the order terminating father's parental rights to N.J., and remand the case to the circuit court for further proceedings consistent with this opinion.[3]

*Reversed, vacated, and remanded.*

---

[2] Father also asserts that the circuit court's decision violated his parental rights under the Due Process Clauses of the Fourteenth Amendment to the United States Constitution and Section 11 of Article I of the Virginia Constitution. We need not address this issue. "It is a well recognized principle of appellate review that constitutional questions should not be decided if the record permits final disposition of a cause on non-constitutional grounds." *Luginbyhl v. Commonwealth*, 48 Va. App. 58, 64 (2006) (quoting *Keller v. Denny*, 232 Va. 512, 516 (1987)). Accordingly, given our decision concerning the circuit court's erroneous interpretation of Code § 16.1-283(C)(2) and the Department's failure to provide services, we need not address father's due process argument.

[3] We previously have held that, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Tackett*, 62 Va. App. at 322 (second alteration in original) (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)). This observation applies to the time it takes a parent to address the issues that necessitated a disruption of the normal parent-child relationship. The time a parent is apart from a child while successfully pursuing an appeal of the termination of that parent's rights regarding the child is different in kind. Accordingly, in any proceeding on remand, the fact that father has been separated from N.J. since the JDR court terminated his parental rights may not be used to justify any diminution in father's parental rights.