COURT OF APPEALS OF VIRGINIA

Present:   Judges AtLee, Causey and Senior Judge Haley
Argued at Richmond, Virginia

UNPUBLISHED

HAROLD JERRY

MEMORANDUM OPINION* BY
v.        Record No. 1304-21-2              JUDGE DORIS HENDERSON CAUSEY
                                            AUGUST 9, 2022
HENRICO COUNTY DEPARTMENT
  OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF HENRICO COUNTY
John Marshall, Judge

John W. Parsons for appellant.

Karen E. Dottore, Assistant County Attorney (Alexander M. Clarke,
Jr., Guardian *ad litem* for the minor children; The Clarke Law
Firm, PLLC, on brief), for appellee.


Harold Jerry ("father") appeals the termination of his parental rights, under Code

§ 16.1-283(C)(2), to his children.  Father contends that the circuit court erred in finding clear and

convincing evidence that (1) termination of his parental rights was in the best interests of the

children and that (2) he had been, without good cause, unable or unwilling within a reasonable time

to substantially remedy the conditions that led to the placement of the children in foster care.

For the reasons below, we affirm.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I. BACKGROUND[1]

Father and Natasha Comer ("mother") are the biological parents to D.C., L.C., and Z.C. ("the children"), born September 14, 2006, February 14, 2008, and May 14, 2009, respectively.

In November 2018, the Henrico County Department of Social Services ("DSS") removed the children from mother and placed the children in foster care. At the time of removal, the children resided with mother. DSS stated that some of the primary reasons for removal of the children were the lack of electricity and the fact that the children's home was facing foreclosure, along with DSS' concerns about mother's mental health. Father was incarcerated when the children entered foster care and for much of the case until his release at the beginning of 2021 due to an October 2018 conviction for felony "driving while under the influence of alcohol and/or drugs, having been convicted of a felony violation of Virginia Code [§]18.2-266" in violation of Code §§ 18.2-266 and 18.2-270.[2]

Originally, the Henrico County Juvenile and Domestic Relations District ("JDR") Court approved a foster care plan with the goal of return home. In June 2019, DSS filed foster care plans with the goal of adoption. The court rejected the goal of adoption and continued the matter to September 2019. In September 2019, the court approved the permanency planning goal of return home. At the time of this goal change, father was still incarcerated and unable to be a

---

[1] The record is sealed. Nevertheless, this appeal requires unsealing limited portions of the record, including factual findings, to resolve the issues appellant has raised. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[2] Under Code § 18.2-270(C)(1): "Any person convicted of three offenses of § 18.2-266 committed within a 10-year period shall upon conviction of the third offense be guilty of a Class 6 felony." Additionally, under Code § 18.2-270(C)(2): "A person who has been convicted of . . . a felony violation of § 18.2-266 shall upon conviction of a subsequent violation of § 18.2-266 be guilty of a Class 6 felony." Thus, it follows that for father to have been convicted of a felony for violating these code sections, having already been convicted of a felony violation of § 18.2-266, the October 2018 DWI was at least his fourth DWI conviction.

placement for the children. In June 2021, the court entered orders changing the permanency planning goal to adoption, the main reason for the goal change being "mother's mental health" and concern about her "being able to meet the [children's] needs long term." The JDR court also entered orders terminating mother's and father's parental rights to the children, which both parents appealed. The Henrico County Circuit Court ("circuit court") heard the appeals on August 31, 2021.

At the hearing, there was testimony that the children were doing "really well" and "really thriving" in their foster homes. Additionally, while all three children were "behind in school" when they first entered foster care, the children were doing better academically.

Dr. Moritz, a licensed clinical psychologist, was qualified to testify as an expert in parenting and psychological evaluations. She testified that father's substance abuse evaluation "scores indicated a high probability of his having a substance use disorder" and that "[b]ased on those results, I would recommend that substance abuse treatment continue." The psychological/parenting evaluation of father states that "his sobriety is essential for his having consistent and healthy interactions with his children." The foster care plan entered in April 2021 required father to follow this evaluation and "maintain safe and stable housing free from negative influences including but not limited to substance/alcohol abuse[.]" In May 2021, despite this requirement, father "[c]urrently acknowledged drinking a beer or two to unwind[.]" DSS noted its "concerns around substance use" for father and that it was something that would not be "resolved quickly."

DSS "reach[ed] out" to father while he was incarcerated to see if there were "any services he could participate in while he was in prison" and to involve him in "family partnership meetings so that he would know what was going on in the case." After father was released from incarceration, Anya Horning, a senior family services specialist in the foster care unit at DSS,

met with him in April 2021 about the case. She followed up on referrals that the prior DSS worker had made for father in January/February 2021. One service was a referral to a "fatherhood group" to help father develop his parenting skills, since father had "never been a primary caretaker" for the children. She also "made a referral to Henrico Mental Health to assist [father] in case management and addressing some of the substance use concerns." Father also completed a parenting and psychological evaluation. Horning and father discussed using the "housing crisis line" that could help "refer [father] to other housing options," but father "stated he did not find that helpful and did not want to live in the kind of housing they provided." Father was compliant in meeting with Henrico Mental Health and consistently attended visitation with the children. He was not compliant in attending the fatherhood support group. The trial judge noted father's recent incarceration for his DUI conviction and how "[t]he only way you get a felony DUI is if you've had two prior misdemeanors. So that would mean this is, at minimum, your fourth DUI conviction." Father responded, "[t]hat sounds about right."

At the time of the hearing, father lived in a halfway house, which would not allow children, and father had no source of income. Upon questioning, father could not articulate specific needs or skills of any of the children, or even what grade they were in school. Prior to father's testimony, evidence had been introduced that some of the children had special academic and mental health needs. The eldest child, who was age fourteen at the time of the hearing, did not object to the termination of his parents' parental rights. Father noted, "at this time, I know I can't take care of myself, so I can't take care of my kids. But I know they're in a better place right now with their foster parents."

The circuit court entered permanency planning orders approving the goal of adoption and orders upholding the termination of father's parental rights to the children. This appeal follows.

II. ANALYSIS[3]

Standard of Review

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court," in this case, DSS. *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014)). When reviewing a trial court's decision to terminate parental rights, we presume the trial court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." *Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 7 (2005) (quoting *Farley v. Farley*, 9 Va. App. 326, 329 (1990)). "It is critical to understand that regardless of what subsection of Code § 16.1-283 [DSS] proceeds under, it must prove each of its allegations by clear and convincing evidence before the . . . court may terminate a parent's parental rights to his or her child." *Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 342, 347 (2012). The circuit court's finding, "when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991). "Where the record contains credible evidence in support of the findings made by that court, we may not retry the facts or substitute our view of the facts for those of the trial court." *Ferguson v. Stafford Cnty. Dep't of Soc. Servs.*, 14 Va. App. 333, 336 (1992).

---

[3] Father also challenges the circuit court's companion order approving the foster care plan's goal of adoption. "Our decision to affirm the termination order necessarily subsumes this aspect of his appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 265 n.3 (2005).

Best Interest of the Children

Father contends that it was not in the children's best interest to terminate his parental rights.

Code § 16.1-283(C)(2) authorizes a court to terminate parental rights if the court finds by clear and convincing evidence that (1) the termination is in the best interest of the child and (2) the parent was unwilling or unable to substantially remedy the conditions that led to or required continuation of the child's foster care placement. In analyzing the first prong, the circuit court must consider:

> the age and physical and mental condition of the child; the age and physical and mental condition of the parent; the relationship existing between the parent and the child; the needs of the child; the role the parent has played, and will play in the future, in the upbringing and care of the child; and any other such factors that are necessary.

*Thach*, 63 Va. App. at 169.

"Virginia law recognizes the 'maxim that, sometimes, the most reliable way to gauge a person's future actions is to examine those of his past.'" *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 267 (2005) (quoting *Petry v. Petry*, 41 Va. App. 782, 793 (2003)). Additionally, "we have long held that '[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities.'" *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 162 (2004) (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)).

Here, clear and convincing evidence supports a finding that it was in the children's best interest to terminate father's parental rights. First, father acknowledged that "at this time, I know I can't take care of myself, so I can't take care of my kids. But I know they're in a better place right now with their foster parents." Second, when prompted by the trial court, father acknowledged that he had about four DUI convictions on his record, one for which he was

recently released from incarceration in early 2021. Father's substance abuse evaluation scores showed a high probability of his having a substance use disorder, and DSS noted its concerns surrounding father's substance use. Despite the psychological/parenting evaluation's directive that father's "sobriety is essential," father admitted to continuing to consume alcohol. Third, father did not have housing that would allow him to take in the children nor did he have a steady source of income. Fourth, father has never been the main caretaker of the children and does not have an in-depth knowledge of the children's needs and lives. Last, the children are "thriving" in their foster care placements and have improved their academic performances. The eldest child also conveyed that he did not want to return home to his parents. Under these circumstances, the trial court did not err when it found that termination of father's parental rights was in the best interests of the children. *See Akers v. Fauquier Cnty. Dep't of Soc. Servs.*, 44 Va. App. 247, 263-64 (2004) (finding it was in the child's best interests to terminate parental rights under Code § 16.1-283(C)(2) where "evidence showed appellant had a longstanding fight with alcoholism," the child did not want to return home, and the child was "flourishing" in the foster home).

Failure to Remedy Conditions

Father also argues that he did not, without good cause, fail to remedy the circumstances that led to or required continuation of the children's placement in foster care. Father asserts that he had been mostly compliant with the services offered to him, except for attending the fatherhood group, and the parenting assessment did not show father had any problematic parenting traits. He also contends that his ability to remedy the conditions leading to the children's placement or continuation in foster care was impacted by his incarceration, seeming to argue that his incarceration was good cause for his failure to remedy these conditions. Father notes that DSS' "efforts to rehabilitate [father] so that he could be able to take custody of his children only really began after his release from prison."

If the court determines by clear and convincing evidence that termination is in the children's best interests, the circuit court then moves to the second prong. *Thach*, 63 Va. App. at 170. Under the second prong, the court must find clear and convincing evidence that:

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or *required continuation* of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2) (emphasis added); *see also Thach*, 63 Va. App. at 170.

We have held that "it would be patently unreasonable" to require DSS to offer services to parents while they are incarcerated. *Harrison*, 42 Va. App. at 163-64. *But see Cain v. Commonwealth ex rel. Dep't of Soc. Servs. for City of Roanoke*, 12 Va. App. 42, 45-46 (1991) (reversing termination of parental rights where DSS did not provide services to mother while she was incarcerated pending trial). Further, a parent cannot "use [his] incarceration as reason to . . . say that [his] failure to remedy the conditions [that led to the children's foster care placement] was not without good cause." *Harris v. Lynchburg Div. of Soc. Servs.*, 223 Va. 235, 242 (1982).

Here, the circuit court did not err in finding that father, without good cause, failed to remedy the circumstances that required the children's continued placement in foster care. Although DSS was not required to provide services to father during his incarceration, DSS still reached out to father to inform him that he should take advantage of any services available in his facility. After father's release in 2021, DSS offered father several services, including a resource to find suitable housing. Father, however, did not want to use this resource. Father lived in a halfway house which would not allow the children to come live with him. One of the primary reasons the children first entered foster care was due to their home being in foreclosure. Father, in refusing to find suitable housing that would allow the children to live with him, has not

- 8 -

remedied the circumstance—unstable shelter—that led to and has continued the children's placement in foster care. Incarceration, as father contends, is not good cause for failure to remedy the circumstances that led to the children's foster care placement, nor has father alleged any other cause for this failure. Thus, we cannot say that the trial court erred in finding that father had not substantially remedied the conditions that led to the children's entry into and continued placement in foster care.

### III. CONCLUSION

Because terminating father's parental rights to D.C., L.C., and Z.C. was in the children's best interest, and father, without good cause, failed to substantially remedy the conditions that led to the children's placement or continued placement in foster care, the trial court did not err.

*Affirmed.*