COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Malveaux and Causey
Argued at Richmond, Virginia

AMANDA L. REECE

                                                     MEMORANDUM OPINION[*] BY

v.        Record No. 0594-22-2               JUDGE DORIS HENDERSON CAUSEY
                                                        OCTOBER 24, 2023

HENRICO COUNTY DEPARTMENT
  OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Lee A. Harris, Jr., Judge

John W. Parsons for appellant.

Karen E. Dottore, Assistant County Attorney (Misty D. Whitehead,
Guardian ad litem for the minor children; JustLaw, PLLC, on brief),
for appellee.

Amanda L. Reece (mother) appeals the circuit court's orders terminating her parental rights

to her children under Code § 16.1-283(C)(2) and approving the foster care goal of adoption. She

contends that the termination of her parental rights and adoption were not in the children's best

interests. Mother also asserts that the Henrico County Department of Social Services (the

Department) failed to provide reasonable and appropriate services to help her substantially remedy

the conditions which led to or required the continuation of the children's placement in foster care.

For the following reasons, we hold that the circuit court did not err and affirm its decision.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

Mother is the biological parent of the two children who are the subject of this appeal. The children were six years old and four years old at the time of removal.[2] The Department first became involved with the family in 2016, after receiving reports of mother's neglect and substance abuse. The Department initiated an ongoing investigation in January 2017. Mother "had very little contact with the ongoing worker and did not engage in substance abuse treatment." Legal and physical custody of the children was awarded to family friends, Shawn and Erin Shipp. "[D]ue to her lack of cooperation with ongoing services and her failure to enter substance abuse treatment," a protective order was entered against mother, prohibiting her from contacting the children. Despite the custody order, the Shipps returned the children to mother in 2019.

In January 2020, the Department made an unannounced home visit in response to a report that mother had again abused substances while caring for the children. Mother reportedly appeared sober. Her home "appeared appropriate and the children's basic needs were being met." Mother refused a drug test but admitted to using drugs a few weeks earlier. The Department created a safety plan, and mother agreed to refrain from using illegal substances. The Department scheduled a meeting with mother for February 6, 2020, but mother neither attended nor called to reschedule.

_____

[1] The record in this case is sealed. Nevertheless, this appeal necessitates unsealing limited portions of the record, including factual findings, to resolve the issues mother has raised. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

Additionally, "[o]n appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014)).

[2] The children's biological father is deceased. Mother has one other biological child who is in the care of a family friend and not the subject of this appeal.

Despite its repeated attempts to reach her, the Department did not connect with mother again until the end of February 2020.

Mother tested positive for cocaine and opiates at a family partnership meeting with the Department in March 2020. Because there were no available relative placement options, the Henrico County Juvenile and Domestic Relations District Court (JDR court) entered emergency removal orders placing the children in foster care. The children were initially placed with a local foster family, but they later transitioned to a therapeutic foster home. Both children attended school and took medication for attention-deficit/hyperactivity disorder (ADHD). They also received speech and language services and mental health counseling.

The foster care plan started with the goal of return home/relative placement. The plan required mother to remedy the concerns that brought the children into foster care: her substance abuse issues and underlying mental health and trauma. The plan also required mother to obtain and maintain stable housing and financing to meet the children's basic needs. Mother was to participate in case planning, attend meetings and court hearings, and complete the Department's recommended services and evaluations.

To help mother address her mental health and trauma issues, the Department gave mother the names and contact information for local substance abuse and detox programs and offered referrals to those programs. The Department also sought to develop a "relapse prevention plan" to assist mother "if there were any instances of relapse or urges or any difficult situations." Yet, the record does not show that the Department ever developed such a plan, though they testified that that was their goal. The Department eventually referred her for a psychological and parenting evaluation in 2021.[3]

---

[3] The Department stressed that "a short period of sobriety" was necessary "before she could participate in the evaluation because substance use can impact the reliability and validity" of the evaluations.

Despite being offered opportunities to visit the children, mother did not visit them until May 2020, approximately two months after they entered foster care. The first visit was virtual, due to COVID-19 restrictions. After May 2020, mother regularly engaged in virtual visits with the children. In July 2020, weekly in-person visits commenced.

In August 2020, the Department determined that the largest barriers to the foster care goal of return home was mother's failure to maintain her sobriety and engage in services. Mother continued regular visitations with the children, but they were virtual. Mother had moved out of state "because of the warrants that were out for her." She had no visitation with the children between October 2020 and February 2021. Mother had not communicated with the Department or been involved in treatment or services during that time.

In March 2021, the Department learned that mother had returned to Virginia and was incarcerated. She was released on bond in April 2021 and moved into a recovery home.[4] Mother began substance abuse treatment, but she was discharged from that program after she stopped going to treatment and ceased communication with the treatment providers. She was also attending an aftercare program and individual therapy.[5] Mother stopped going to the aftercare program because "[she] thought that [she] had it . . . together. [She] didn't need the aftercare anymore." For a time, following her release and treatment, mother was more consistent in her communication with the Department. Mother's communication, however, diminished in the Fall of 2021. She missed her visitations with the children and appointments with the Department. Mother admitted to relapsing on cocaine and heroin, confirmed by hair follicle testing in December 2021.

---

[4] Amanda Swindle, Senior Family Services Specialist with Henrico DSS, testified that mother's admittance to the recovery home "was . . . part of the bond provisions."

[5] Mother found and participated in most of the treatment programs on her own and not through Henrico DSS.

In December 2021, the JDR court denied the Department's requests to change the foster care goal to adoption and terminate mother's parental rights. The Department appealed the JDR court's order. The parties appeared before the circuit court in January 2022. By then, the children were residing in their fourth foster home.

The children's social worker testified that the children had made a lot of progress since entering foster care, "given the different therapies that they['d] been in, the services that ha[d] been provided to them, and the stability, even though they've had to change placements." Mother testified that following her most recent relapse in November 2021, she arranged for a prescription for suboxone, which helps with her opiate usage. She also had a sponsor and regularly attended Narcotics Anonymous meetings. In addition, mother had arranged to switch her treatment to an organization that provided individualized mental health counseling with trauma-based services as well as substance abuse treatment services. Mother acknowledged that her visitations with the children had not been consistent and that she needed to do "some work" before the children could return to her care.[6]

In response, the Department expressed concern about the children returning to mother's care because it had not seen significant progress from mother since the children entered foster care. Mother had not resumed treatment for her addiction issues until only a week before the circuit court hearing. The Department also articulated concerns that mother had issues of "unresolved trauma" and that "the substance use issues are . . . exacerbated and impacted by underlying trauma and unaddressed mental health issues." The Department also stated that mother lacked "insight, awareness[,] . . . understanding[,] and full accountability" of her role in the circumstances that required the children to enter foster care.

---

[6] At this time, the children had been in foster care for approximately 20 months.

After hearing the evidence and arguments, the circuit court approved the foster care goal of adoption and found that it was in the children's best interests to terminate mother's parental rights under Code § 16.1-283(C)(2). The circuit court noted that the Department had been involved with the family since 2016. The circuit court stated that mother's visitation with the children and her contact with the Department had been "sporadic" and found that mother did not take advantage of the services the Department had to offer. The circuit court emphasized that the children needed stability, and based on mother's history, the evidence showed that mother was "not able to give the children the stability they need." Based on these findings, the circuit court entered orders for involuntary termination of mother's residual parental rights for both children and approved the foster care goal of adoption. Mother timely appealed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)). We hold that the circuit court did not err by terminating mother's parental rights and approving the foster care goal of adoption.

Mother contends that the circuit court erred in terminating her parental rights because the Department showed little evidence of rehabilitative services offered to mother "other than her being given names and addresses for programs, both in-patient and out-patient, that she would have to pursue on her own." Mother contends that "[i]n this circumstance with a serious drug addiction

affecting the health and reasoning of [mother], some form of assistance greater than just a list of names and addresses of programs which she could contact would have been reasonable and appropriate" and that "[s]he needed to be guided and taken to the program." From 2016[7] onward, the Department never helped mother contact any drug treatment program. Although mother contends that she "was making steps forward in making a sober life for herself after her incarceration in February of 2021," she acknowledges relapsing three months before the circuit court hearing. Mother concludes that the circuit court erred by failing to give her "more time to work through the final steps of demonstrating that she could live a sober life and provide for the care of her children in her custody."

The circuit court terminated mother's parental rights under Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi v. Stafford Dep't of Soc. Servs*, 69 Va. App. 539, 552 (2018) (alteration in original) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)).

---

[7] The Department's initial contact with Ms. Reece in the Fall of 2016 was a result of a report regarding her substance abuse; the children were removed and placed with a family friend, who later returned the children to Ms. Reece outside of the structure of the Department. In 2017, the Department closed the case because of repeated failures to contact Ms. Reece—the children were safe, and they weren't "really able to further help." After their return, the children resided with Ms. Reece until another abuse and neglect report was received in early 2020.

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 163 (2004) (quoting *Ferguson v. Stafford Cnty. Dep't of Soc. Servs.*, 14 Va. App. 333, 338-39 (1992)). The Department "is not required to force its services upon an unwilling or disinterested parent." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 323 (2013) (quoting *Harris v. Lynchburg Div. of Soc. Servs.*, 223 Va. 235, 243 (1982)); *see Logan*, 13 Va. App. at 130-31 (concluding that when Logan "was generally unmotivated to make even the slightest efforts to visit [her child] or to keep track of his status, . . . it was reasonable for the Department not to have offered Ms. Logan additional services for her personality problems").

Here, although there is some validity in mother's dissatisfaction with the quality of assistance that the Department offered her once the children had entered foster care, there is evidence to support a finding that its efforts were reasonable and appropriate. Given mother's seeming disinterest in visiting the children, with at least two longer periods of mother having no visitation with the children at all, it was reasonable for the Department not to force its substance abuse and mental health services on her.[8] In addition to visitations, the Department referred mother for a psychological and parenting evaluation.

There is also evidence that termination of mother's residual parental rights was in the best interest of the children. Since the children entered foster care, they had benefitted from medication

---

[8] The Department's efforts, here, are not far from falling short of the reasonable and appropriate efforts required by Code § 16.1-283(C)(2). We note, simply advising a parent of the services available to her is not enough to meet the requirement that a social services agency provide reasonable and appropriate efforts "to assist a delinquent parent in remedying the conditions that le[d] to a parent's temporary relinquishment of the children to the care of the department." *Cain v. Commonwealth ex re. Dep't of Social Servs. for City of Roanoke*, 12 Va. App. 42, 45 (1991).

for ADHD, speech and language services, and mental health counseling.  The children had improved academically and behaviorally in school.  At the time of the circuit court hearing, the children had already been in foster care for nearly two years, and as mother concedes, she was still not in a position to resume custody of them.  "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming [her] responsibilities."  *Tackett*, 62 Va. App. at 322 (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)).

Because the Department provided reasonable and appropriate services to mother and termination was in the best interest of the children, the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(C)(2).  Notwithstanding the holding, however, we reiterate that the code section places *an affirmative duty* on the Department to provide reasonable and appropriate efforts to rehabilitate Ms. Reece.  With respect to mother's challenge of the foster care goal of adoption, "[o]ur decision to affirm the termination order necessarily subsumes this aspect of h[er] appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans."  *Toms*, 46 Va. App. at 265 n.3.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

*Affirmed*.